**WOUNDED KNEE LEGAL DE-
FENSE/OFFENSE COMMIT-
TEE et al., Appellants,**

v.

**The FEDERAL BUREAU OF INVES-
TIGATION et al., Appellees.**

No. 73–1908.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1974.

Decided Nov. 7, 1974.

Lawrence Wm. Steinberg, Beverly Hills, Cal., for appellants.

William F. Clayton, U. S. Atty., Sioux Falls, S. D., for appellees.

Before VOGEL, Senior Circuit Judge, and ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In this appeal, the Wounded Knee Legal Defense/Offense Committee ("the Committee"), an organization formed to provide free legal aid to the defendants in the criminal cases which followed the occupation of Wounded Knee, South Dakota, by militant American Indians, seeks reversal of an order of the District Court [1] denying an application for a preliminary injunction against the Federal Bureau of Investigation and related individuals.

The problems giving rise to this case began in March, 1973, when the Committee opened an office in a Rapid City, South Dakota, motel. At that time the area was replete with F.B.I. agents and federal marshals who had been summoned as a result of the Indian action at Wounded Knee. Ill will developed between the two groups almost immediately.[2] In June, 1973, the Committee moved its office to a local fraternity house. Shortly thereafter, the F.B.I. moved its agents into a motel about 100 yards from the fraternity house. The hostility between the F.B.I. agents and the Committee increased during the summer as the agents moved about the vicinity and members of the Committee began to photograph them. This hostility culminated in a succession of events which occurred on August 4–6,

---

1. The Honorable Andrew W. Bogue, United States District Judge, District of South Dakota.

2. The record indicates that the Committee believed its activities were being surveyed and its members harassed from the day it opened its office. Tr. at 134–40.

1973. The details of these events are hotly disputed by the parties.[3]

On August 4, two Committee members were arrested by the F.B.I. Thereafter, at least three instances of physical contact between Committee members and F.B.I. agents are reported. The Committee charges that the arrests were made without proper cause and that F.B.I. agents committed numerous acts of assault on its members. The F.B.I., on the other hand, contends that its agents were never guilty of any wrongdoing and that the confrontations in question were initiated by the Committee.

In its application for a preliminary injunction,[4] the Committee cited these events and sought to bar the F.B.I. from harassing or intimidating its members and from interfering with their activities. After a lengthy hearing on the matter, the District Court determined that the circumstances did not warrant the issuance of a preliminary injunction and denied the Committee's application in an unreported memorandum decision. The Committee appeals from this denial under 28 U.S.C. § 1292(a)(1), and asserts that Judge Bogue erred (1) in failing to recuse himself; (2) in refusing to consider certain affidavits offered in support of its application; and (3) by declining to issue a preliminary injunction. The F.B.I. contends that the District Court lacked subject-matter jurisdiction.

## JURISDICTION

We turn first to the issue of jurisdiction. The District Judge found

---

3. Anthony Miller, a Committee attorney, testified that as he was photographing a late model car containing a two-way radio, one of its occupants emerged and began calling him obscene names. He identified this man as Special Agent Morris Pierson of the F.B.I. Mr. Muller further testified that another F.B.I. agent, Charles Kempf, came walking down the street while this was going on and that he photographed Kempf. Muller stated that Kempf then began to struggle with him for the camera and smashed the camera into his face, injuring his lower lip and mouth. Tr. at 24–35.

Special Agent Kempf testified that he walked into the area where Muller was photographing the automobile, which he knew to be an F.B.I. car, to find out what was going on and that Muller began taking photographs of his face from a distance of 8–10 inches. He said that he took hold of the camera and moved it to about chest height. Kempf stated that he repeated this action when Muller again moved the camera close to his face, but that he had no physical contact whatever with Muller. Tr. at 319–22.

Carolyn Mugar, another Committee member, testified that F.B.I. agent Ronald Brugger threatened her eyes with his keys. Tr. at 63. Brugger acknowledged that the incident had occurred, and stated that he had lifted his hands to protect his face from a camera but that he could not recall whether or not he had keys in his hands. Tr. at 267–68.

Mugar also testified that as she was following Agent Morris Pierson up the stairs of the police station in Rapid City, having just photographed him, he stepped back as he opened the door and threw the full weight of his body into her, knocking her down the stairs. Tr. at 68–69. Pierson did not testify, but Agent H. J. Lattus, who witnessed the incident, did. He said that Ms. Mugar was running behind Agent Pierson and that when he stopped to open the door she ran into him and lost her balance, but did not fall. Tr. at 330.

Mark Lane, a Committee attorney, testified that as Lake Headley, another Committee member, was taking pictures in the lobby of the motel where the agents were staying, F.B.I. agent David Keller grabbed Headley and that David Price, after identifying himself and Keller as F.B.I. agents, pushed Headley toward the door in a violent fashion. Tr. at 114–25. Keller testified that he only placed his hand on Headley's arm in order to stop Headley's advance on him. Tr. at 304–08. Price also testified and stated that his only physical contact with Headley was when Headley grabbed his arm as he was blocking Headley's advance toward Keller. Tr. at 286–89.

We must and do accord deference to the trial court's assessment of the credibility issues reflected in his decision to deny the application for preliminary injunction, discussed *infra*.

4. The complaint filed by the Committee sought monetary and injunctive relief for the alleged violation by F.B.I. agents of the constitutional rights of Committee members and their clients. The Committee's application for a temporary restraining order was denied by the District Court on August 16, 1973.

jurisdiction both under 28 U.S.C. §§ 1331 and 1343. In the absence of any asserted act of Congress for the protection of civil rights, or any allegation of state action or action under color thereof, it seems doubtful that § 1343 will support jurisdiction here.[5] This we need not decide, however, because § 1331 supplies the requisite subject-matter jurisdiction.[6]

The Committee charges that federal agents violated the Fourth Amendment rights of its members and the Sixth Amendment rights of their clients. The Supreme Court determined in Bell v. Hood, 327 U.S. 678, 680, 66 S.Ct. 773, 90 L.Ed. 939 (1946), that a civil suit against federal agents acting within the scope of their authority for damages resulting from their violation of a person's constitutionally protected rights could arise under the Constitution or laws of the United States, as required by the statutory predecessor of 28 U.S.C. § 1331.[7] Later, in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 389, 91 S.Ct. 1999, 2001, 29 L.Ed.2d 619 (1971), the Court held that a violation of the Fourth Amendment "by a federal agent acting under color of his authority gives rise to a cause of action for damages consequent upon his unconstitutional conduct." While in *Bivens* the plaintiffs sought monetary damages against federal agents, the role of the courts in protecting constitutional rights by injunctive relief is the same, and in appropriate circumstances the federal courts have power to grant injunctive relief against a department of the executive branch of the federal government. *See* Youngstown Sheet & Tube Co. v. Sawyer, 343 U.S. 579, 72 S.Ct. 863, 96 L.Ed.

1153, aff'g, 103 F.Supp. 569 (D.D.C. 1952) (Secretary of Commerce enjoined from continuing seizure and possession of steel mills); *cf.* Bell v. Hood, *supra,* 327 U.S. at 684, 66 S.Ct. 773.

At issue in the merits of the case (not yet determined) is the right of members of the Committee to provide effective assistance of counsel to their Indian clients who wish to avail themselves of their Sixth Amendment rights. Appellees' contention that the Committee has not alleged an actual injury sufficiently personal to present a justiciable case or controversy cannot stand in light of our decision in Nyberg v. City of Virginia, 495 F.2d 1342, 1344 (8th Cir. 1974), wherein we held that the rights of medical doctors to freely practice medicine are so "inextricably bound up" with the privacy rights of their patients that the doctors have standing to challenge the validity of abortion laws. *See also* Doe v. Bolton, 410 U.S. 179, 93 S.Ct. 739, 35 L.Ed.2d 201 (1973). With even stronger force it may be said that a lawyer has standing to challenge any act which interferes with his professional obligation to his client and thereby, through the lawyer, invades the client's constitutional right to counsel. It requires no citation of authorities to reaffirm our historic commitment to effective assistance of counsel in criminal cases. That right may not be fettered by harassment of government officials, and any claim which factually asserts such harassment presents a federal question for our determination.

Nor is this case moot.[8] The Supreme Court has repeatedly held that a case does not become moot merely by the cessation of the challenged conduct unless there is no reasonable expectation

---

5. *See* Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 398 n. 1, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (Harlan, J. concurring).

6. 28 U.S.C. § 1331(a) provides:
   The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and

costs, and arises under the Constitution, laws, or treaties of the United States.

7. Act of March 3, 1911, ch. 231, § 24, part 1, 36 stat. 1091.

8. At oral argument it was conceded that there was "a distinct lessening of overt activity" after the F.B.I. agents left the area in mid-August, 1973.

that the wrong will be repeated. *E. g.,* NLRB v. Raytheon Co., 398 U.S. 25, 90 S.Ct. 1547, 26 L.Ed.2d 21 (1970); United States v. Concentrated Phosphate Export Association, 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); United States v. W. T. Grant Co., 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953); United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S.Ct. 540, 41 L.Ed. 1007 (1897).

## REFUSAL TO RECUSE

At the outset of the hearing on its application for a preliminary injunction, the Committee requested that Judge Bogue recuse himself pursuant to a motion filed the same day.

The motion to recuse recited that Judge Bogue had personal bias and prejudice against plaintiffs and in favor of defendants; that Judge Bogue had previously granted the recusance motions of two defendants in the criminal cases, Russell Means and Dennis Banks; that Judge Bogue denied similar motions to five other defendants in related criminal cases (the "leadership" cases); and that the work of plaintiffs was substantially for such defendants in the criminal cases and therefore the complaint for injunction was also on their behalf. At the hearing, the plaintiffs asserted that the order of this court denying mandamus relief but transferring the so-called "leadership" cases from Judge Bogue to Judge Nichol as an administrative matter was further evidence of the need for disqualification.

The complaint was filed August 13, 1973, together with a Motion for Temporary Restraining Order and for Preliminary Injunction. A supporting memorandum of law and exhibit list were filed August 14, 1973, and a hearing held the same day. On August 16, Judge Bogue entered his memorandum decision denying the motion for a temporary restraining order. Because of short notice to the United States Attorney representing these defendants, Judge Bogue did not deal with the motion for preliminary injunction at that time.

The motion to recuse was filed and heard on September 1, 1973, the date set for the preliminary hearing. Judge Bogue expressed from the bench his view that the criminal cases involving the Wounded Knee leaders were not so interwoven with plaintiffs' interests as to require reversal and denied the motion as "legally insufficient."

The only affidavit offered in support of the motion was that of Russell Means, made June 4, 1973, prior to the filing of this complaint. The affidavit asserts the only factual claims of prejudice: that in April, 1973, Judge Bogue expressed concern to Means' attorney because a newspaper reported that Means had asserted the American Indian movement would take western South Dakota by force; that Judge Bogue threatened to revoke Means' bond [he did not do so]; that Judge Bogue unreasonably declared his intention to accelerate Means' trial; that Judge Bogue attempted to coerce testimony against Means from Pedro Bissonette; and that Judge Bogue had formed opinions as to the activities of Means and others before charges were brought against them as evidenced by his statements to others.

If the affidavit is legally sufficient, it is the duty of the district judge to disqualify himself notwithstanding the judge would challenge the truth of such allegations. 28 U.S.C. § 144; *see, e. g.,* Berger v. United States, 255 U.S. 22, 32, 41 S.Ct. 230, 65 L.Ed. 481 (1921); United States v. Townsend, 478 F.2d 1072, 1073 (3d Cir. 1973). On the other hand, "[a]n affidavit must strictly comply with all of the statutory requirements before it will effectively disqualify a judge." United States v. Anderson, 433 F.2d 856, 859 (8th Cir. 1970). As observed in *Anderson, supra,* a court's ruling on a question of law does not show the requisite bias, and conclusory allegations may not be substituted for specific facts. In this case the affidavit is not even executed by a

named plaintiff, but rather by one of the larger class of Indians which plaintiffs claim to represent.[9] *See* Berger v. United States, *supra*, 255 U.S. at 34, 41 S.Ct. 230; Giebe v. Pence, 431 F.2d 942 (9th Cir. 1970); *cf.* Cuddy v. Otis, 33 F.2d 577 (8th Cir. 1929).

█ We think Judge Bogue correctly concluded that these highly attenuated claims were legally insufficient. Moreover, the motion was not made until after Judge Bogue had entered upon this case and had invested substantial judicial time, including an evidentiary hearing on the application for temporary restraining order and preparation of a detailed memorandum decision thereon. The motion was untimely and no just cause for delay appears in the record. *See* 28 U.S.C. § 144. "When an affidavit does not meet the requirements imposed by law, the judge has an obligation not to disqualify himself." United States v. Anderson, *supra*, 433 F.2d at 860. *See also* Faubus v. United States, 254 F.2d 797, 804 (8th Cir.), cert. denied, 358 U.S. 829, 79 S.Ct. 49, 3 L.Ed. 2d 68 (1958), wherein we held that an affidavit of prejudice filed the day before a petition for a preliminary injunction was to be heard was not timely.

## REJECTION OF AFFIDAVITS

At the hearing on the application for preliminary injunction, the Committee sought to introduce the affidavits of some of its members who were no longer in South Dakota.[10] The affidavits described several of the incidents involving Committee members and F.B.I. agents

and tended to support the oral testimony presented by the Committee at the hearing. They were, however, cumulative and added no new material facts to the Committee's case.[11] When faced with the question of admission of these affidavits, the District Judge said, "I don't know of any rule of evidence that would allow me to do this * * *." Tr. at 20. The District Judge denied the motion to admit the affidavits into evidence, but did suggest that the Committee re-raise its motion later in the proceedings.

The Committee again offered its affidavits as the hearing was drawing to a close, and the District Judge again refused to admit them, saying:

> This hearing has been set for a number of weeks and there has been ample opportunity to take depositions, if Plaintiffs so desired, in the event any persons would not be available for this hearing on the motion for a preliminary injunction. And it was the opinion of this Court that the right of cross-examination is not going to be denied in a case which would be the situation if I were to allow the affidavits into evidence.
> Tr. at 341–42.

The Committee contends that this ruling is erroneous and an abuse of discretion requiring reversal of the District Court's order denying a preliminary injunction.

█ The District Judge erred in assuming that no rule of evidence would allow him to receive the affidavits. By its nature, an application for a prelimi-

---

9. On Novem 13, 1973, Judge Bogue denied plaintiffs the right to maintain a class action.

10. The Committee consists of a constantly changing group of volunteers who donate whatever time they can afford.

11. The affidavits included signed and sworn statements by the two Committee members who were arrested by the F.B.I. which could lead a reader to believe that the arrests were improper and designed to intimidate investigators for th Committee. Substantially the same information was presented at

the hearing by Committee attorney Mark Lane. Tr. at 110–14.

Also included in the affidavits were eyewitness accounts of "assaults" by F.B.I. agents on Committee members Carolyn Mugar, Anthony Muller and Lake Headley. Mugar and Muller both testified at the hearing. The "assault" on Headley was described to the court by Mark Lane, who witnessed the incident. Tr. at 116–20.

The affidavits also underscored the ill will that existed between Committee members and F.B.I. agents.

nary injunction often requires an expeditious hearing and decision. In order to overcome the problems that would be created in attempting to gather the necessary witnesses, it has often been held that affidavits may be received at a hearing on a motion for a preliminary injunction. *See, e. g.,* Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc., 446 F.2d 353, 356–358 (5th Cir. 1971); Semmes Motors, Inc. v. Ford Motor Co., 429 F.2d 1197, 1204–1205 (2d Cir. 1970); San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 546 (9th Cir. 1969); Ross-Whitney Corp. v. Smith Kline & French Laboratories, 207 F.2d 190, 194 (9th Cir. 1953); Brooklyn National League Baseball Club v. Pasquel, 66 F. Supp. 117, 119–120 (E.D.Mo.1946). *See generally* 11 C. Wright & A. Miller, Federal Practice and Procedure § 2949 (1973).[12]

■ However, the District Court was not required to receive the Committee's affidavits in this case for two reasons. First, as the District Court pointed out, the hearing was not a hastily called proceeding, but rather one which had been planned weeks in advance. Both sides had ample time to gather their witnesses.

Second, the affidavits offered by the Committee related to controverted issues of fact. While the Committee presented testimony which charged that its activities had been under constant surveillance by the F.B.I., the Assistant Special Agent in charge of the Minneapolis Division of the F.B.I. testified that Committee activities were never surveyed. Tr. at 134–40, 224–25. Committee members testified as to acts of aggression and assault by F.B.I. agents, yet several agents described the confrontations and instances of physical contact as being

Committee-induced. When faced with a similar situation, the Third Circuit said:

> There can be no doubt that where the right to relief is clear the court, in the exercise of its discretion, may grant an injunction pendente lite on the basis of ex parte affidavits. However, where the affidavits relate to controverted factual issues the court is not required to receive them in lieu of oral testimony. * * * The court should insist, as it did here, on the presentation of oral testimony which may be subjected to the test of cross-examination.

Industrial Electronics Corp. v. Cline, 330 F.2d 480, 483 (3rd Cir. 1964) (citations omitted).

We find no abuse of discretion here.

## APPLICABLE STANDARDS

Finally, the Committee asserts that the District Court erred in failing to issue a preliminary injunction on the facts of the case as presented in the record. In Minnesota Bearing Co. v. White Motor Corp., 470 F.2d 1323, 1326 (8th Cir. 1973), we said:

> In order to justify the issuance of a preliminary injunction by the trial court, the movant has the burden of showing:
>
> (1) substantial probability of success at trial by the moving party, and
>
> (2) irreparable injury to the moving party absent such issuance.

The District Court, in its memorandum opinion, found that the Committee had not only failed to show a substantial likelihood of success on the merits but that it appeared highly questionable whether the Committee would succeed in any of its causes of action. The court below also noted that there had been no showing of irreparable harm to the

---

12. In Builders Steel Co. v. Comm'r, 179 F.2d 377, 379 (8th Cir. 1950), we said:

   [A] trial judge who, in the trial of a nonjury case, attempts to make strict rulings on the admissibility of evidence, can easily get his decision reversed by excluding evidence which is objected to, but which, on review, the appellate court believes should have been admitted. * * * [I]f evidence was excluded which [the appellate] court regards as having been admissible, a new trial or rehearing cannot be avoided.

Committee if the preliminary injunction were not issued.[13]

The record discloses substantial support for the F.B.I.'s position as well as the Committee's.[14] Our scope of review of an order denying a preliminary injunction is very limited, and we cannot reverse the trial court's order unless we determine that it has abused its discretion. Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 88 L.Ed. 834 (1944); Minnesota Bearing Co. v. White Motor Corp., *supra*, 470 F.2d at 1326; Shearman v. Missouri Pacific Railroad Co., 250 F.2d 191, 195 (8th Cir. 1957). Judge Bogue applied the proper standards in deciding not to grant the Committee's application for a preliminary injunction. While a trial on the merits may produce a different result, we cannot say that the District Court, upon the evidence properly before it, abused its discretion.

Accordingly, the order of the District Court denying a preliminary injunction is affirmed.

13.  See note 8 *supra.*      14.  *See* note 3 *supra.*