**HAWAII–PACIFIC VENTURE CAPITAL CORP. et al., Plaintiffs,**

**v.**

**H. B. ROTHBARD et al., Defendants,**

**and**

**American Security Bank et al., Garnishees.**

**David M. SAPP et al., Plaintiffs,**

**v.**

**Willard M. P. WONG et al., Defendants.**

**Civ. Nos. 70–3104 and 73–3997.**

United States District Court, D. Hawaii.

Feb. 18, 1977.

William W. Saunders, Jack C. Morse, Honolulu, Hawaii, for class action plaintiffs.

Thomas L. Mui, Honolulu, Hawaii, for plaintiff Rothbard and third-party defendant.

Lawrence I. Weisman, Honolulu, Hawaii, for defendant Wong and defendants and third-party plaintiff.

Jay M. Fidel, Wesley H. Sakai, Jr., Honolulu, Hawaii, for applicants for intervention.

### DECISION ON MOTIONS TO DISQUALIFY AND FOR A NEW TRIAL

PENCE, District Judge.

I have before me Willard M. P. Wong's "Motion to Disqualify and For A New Trial" in Civil No. 70–3104, and "Motion to Disqualify" in Civil No. 73–3997, of January 12, 1977.

As pointed out by plaintiffs' counsel, these motions were filed at 4:30 p. m.—as the Clerk's office was closing—on the afternoon before this court was to have a final hearing concerning matters raised in Wong's various motions which had been set for 9:30 a. m. on the following day. Inasmuch as the document in 70–3104 contained a total of 142 pages, including exhibits, this court perforce continued all matters until a resolution of Wong's motions.

The complaint in Civil 70–3104 was filed January 6, 1970. Thereby Wong and others were charged with certain fraudulent actions in connection with the sale and transfer of securities in 1968 and 1969. Wong and others were alleged to have made an inside deal which upon trial resulted in a judgment against Wong of over $400,000. All the proceedings in the case were before me. The trial itself consumed nine days during February and March of 1973.

At the conclusion of all of the evidence and oral argument by counsel, in open court I made a very full and complete oral analysis of the evidence and made oral findings of fact and conclusions of law. That oral decision contained a detailed analysis of the evidence and the testimony of the witnesses. Wong had taken the stand several times and I made the following findings—explaining each time the basis for my conclusions:

[T]hat was his testimony. Now that is unbelievable. Just flatly, its unbelievable. (Tr. 1010, Vol. 4)

[H]ere he was, the director of Liberty Bank, a big financier interested in many things, traveled widely, big operations going elsewhere, needed the best credit, and he wanted to disavow anything which he felt to his interest to disavow—and that's the way the Court analyzes his statement here. He was disavowing it because at that moment he thought it was to his best interest to disavow. (Tr. 1011, Vol. 4)

I simply couldn't believe that his testimony was true and subsequently he con-

firmed a lot of the belief because of the statements he made . . . and later on when he was called by Mr. Padgett, completely in contradiction to the opening statements. (Tr. 1012, Vol. 4)

Well, it is my conclusion and I find that Mr. Wong told the truth when he thought it would be to his advantage and seldom at any other time. His contradictions—I won't go into them all—his contradictions run throughout his entire testimony. (*Ibid.*)

I noted when Wong testified, that time after time whenever there was a sensitive area and there was a real difficulty on his part to answer the questions, he was very evasive. I could not help but consider his ethics in his operations with the bank in determining how much weight I could give to his testimony and how much I could believe him. Everyone here recognized that he completely paid no attention to his obligations as an officer of the bank. He was only concerned with: What can I get out of it? (Tr. 1016, Vol. 4)

[I]f he hadn't lied so often and been such a shark in here. . . . [A]s indicated, he worships the god of gold more than he worships any other factor of honor, integrity and so forth. He fought this all the way through. As I said, he didn't even tell his counsel all the truth in the matter. (Tr. 1025, Vol. 4)

I find that Wong's defense here was fabricated to the point that it is—I wouldn't say frivolous, but it's almost to the point that so far as attorney's fees, it was frivolous. The Court had no confidence in any of his representations, when this case was all over, except those that were confirmed by other evidence. (Tr. 1027, Vol. 4)

The above excerpts from my oral decision were condensed in the court's written Findings of Fact, Conclusions of Law and Judgment:

54. The testimony given by Willard M. P. Wong in this trial was to a great extent fabricated and intentionally false. The Court finds that the lengthy trial in Civil No. 70–3104 was necessitated primarily because of Wong's fabrications. . . . (Record, Vol. I, at 290)

As stated above, the evidentiary basis for each and every oral finding of fabrication on the part of Wong was set forth in detail in the oral decision.

Thereafter, a very substantial judgment was rendered against Wong because of "Wong's illicit profit." [1] Wong appealed to the Ninth Circuit. There resulted a remand to this court on January 6, 1975, for further consideration of the damages. The appellate court ordered a determination of the market value of a certain stock in 1968. Thereafter, a judgment on remand was entered on March 28, 1975. Also, Civil No. 73–3997 involving allegation of fraudulent conveyance by Wong to others has been on my calendar and subject to several hearings.

In March of 1976 I was holding a hearing in Orchid Island Hotel, Inc., BK 76–0061. As appears from Exhibit A attached to counsel's Affidavit and Certificate of Good Faith in Civil No. 73–3997, Au, an attorney for one of the parties, advised the court that he wished to call "the Trustee, Mr. Willard Wong" to testify concerning the hotel's prior operations. Some time before, Wong had been appointed Receiver under a mortgage foreclosure action by state court Judge Arthur Fong who was Wong's prior attorney. As indicated in the exhibit, the court was prepared to proceed but Au reported that Mr. Weisman, Wong's attorney, had said that Wong was "unable to be present."

Mr. Weisman: Mr. Wong returned from Canada yesterday . . . ill with the flu and could not be here this morning.

Thereafter appears:

The Court: All right. How soon will you be able to get a doctor's certificate as to his illness?

---

1. *See* appellate remand order No. 73–2691 of January 6, 1975: "The sum remaining would then be the extent of Wong's illicit profit."

You know why I say that, because I'm on record as to what I think of his veracity.

Mr. Weisman: I understand that.

The "record" to which I referred and which was understood by Mr. Weisman to be, is the record in Civil 70–3104, which I have set forth in detail above.

Other than the above two judicial statements concerning Wong and his credibility, nowhere has Wong produced even one scrap of paper or one bit of even hearsay evidence that I have ever expressed any extrajudicial statement or comment concerning Wong's veracity.

It was with the above judicial background that Wong filed his motion to disqualify and his attorney filed the required affidavit of good faith.

 The law is only too well settled that §§ 144 and 455, Title 28, U.S.C., have always been and are construed to be *in pari materia.* *Davis v. Board of School Com'rs of Mobile County,* 517 F.2d 1044, 1052 (5th Cir. 1975). With but few exceptions not here relevant, it is still the law under the new § 455 that any bias or prejudice arising in a judicial context cannot be a basis for disqualification. *Davis, supra,* and cases cited therein.

A judge may not be disqualified for any bias developed during the very trial in which disqualification is sought. To hold otherwise would obviously disqualify the judge in almost every case where he is forced to make a decision. *Tynan v. U. S.,* 126 U.S.App.D.C. 206, 376 F.2d 761, 764 (1976), *cert. denied,* 389 U.S. 845, 88 S.Ct. 95, 19 L.Ed.2d 111. *Cf. Mitchell v. Sirica,* 163 U.S.App.D.C. 373, 502 F.2d 375 (1974).

While in Civil 73–3997 Wong asks only that I recuse myself from the proceedings in that action, in Civil 70–3104 he asks not only that I recuse myself but also that the judgment and findings previously made in that case be set aside and Wong be granted a new trial on all issues. If I am to recuse myself therefore, the basis for my alleged bias and prejudice must appear from extrajudicial conduct on my part. The *facts*

contained in Wong's affidavit and exhibits must show that my findings of fact and conclusions of law concerning Wong's credibility in Civil 70–3104, set forth above, reasonably were founded upon a preceding bias and prejudice against Wong himself.

The theme running throughout Wong's labored and prolix affidavit is that "the Court in this case and in totally unrelated cases displayed uncommon antagonism toward [him]. I could not understand the basis for the Court's antagonism until I recently learned the facts set forth below from . . . files which were previously unavailable to me." (¶ 4) "My awareness of the source of Judge Pence's animosity toward me did not arise until July 15, 1976", etc. (¶ 5) Even the most minute search through the 26 exhibits, two affidavits, and Wong's own 22 page affidavit reveals but *one* declared expression or manifestation of possible antagonism or bias or prejudice on my part toward Wong between 1967 and 1973. That one is contained in ¶ 6 when *Wong states* that in late 1967 or early 1968 I requested that he agree to a sale of a parcel of property known as the Kona Riviera (K–R) in which Wong and I—among others—were members of a partnership formed in 1959 to purchase the parcel for resale, for $3.25 a square foot and Wong recites, "I responded to the Judge's request by telling him that I considered the offer totally inadequate and that I refused to go along. The Judge responded in a heated fashion that 'we have the votes and we will sell it without your concurrence,' or words to that effect." (¶ 6.) Apart from that declaration, nowhere in any of Wong's motions and supporting documents is there to be found even "one scrap of paper", one hearsay word or expression or declaration evidencing any thought, let alone act, of extrajudicial antagonism or bias and prejudice on my part against Wong.

It is only in counsel's Certificate of Good Faith, in *Sapp,* 73–3997, that one, and only one, specific instance of any comment by me concerning Wong outside of my oral decision of March 2, 1973 in 70–3104 and my written findings of fact and conclusions of

law in the same case, is found. That single instance, set out as Exhibit A of the above-mentioned certificate was made in the bankruptcy hearing in Orchid Island Hotel, Inc., as heretofore noted.

The requisite that the affidavit and supporting data show "a reasonable factual basis for doubting the Judge's impartiality" cannot be founded upon a judge's findings of fact and expression of judicial opinion arising out of the very case in which his disqualification is sought. While the court's rulings in an earlier phase of the same case might provide a basis for a claim of error, they do not provide a basis for disqualification. *Botts v. U. S.,* 413 F.2d 41 (9th Cir. 1969).

"Bias and prejudice" must stem from some extrajudicial source and result in an opinion on the merits on some basis other than what the judge has learned from his participation in the case. *U. S. v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1967).

The best that can be said of Wong's affidavit is that he sets out a multitude of conclusional allegations that I must have been biased and prejudiced against him long before this suit ever started because (1) he received more money from a smaller investment in K–R than I did; (2) he blocked the sale of K–R at $3.25 a square foot and therefore I lost money; (3) I am envious of him over his sale of the Gatzemeyer property; (4) I am afraid he might sue me and that I wish to crush him financially so that he won't be able to sue; and (5) I might have knowledge of the status of his finances in 1968. As the preceding painstaking analysis has disclosed,[2] not once does Wong set out any objective *fact* to indicate that any of his conclusions of extrajudicial antagonism, bias and prejudice, are anything other than self-created and self-serving chimeras.

As indicated in *Berger v. U. S.,* 255 U.S. 22, 35, 41 S.Ct. 230, 233, 65 L.Ed. 481 (1921), if the affidavit, by the facts contained therein, shows the objectionable inclination or disposition of the judge, he should proceed no further in the case, "for of what concern is it to a judge to preside in a particular case." Since 1970 the Wong cases have taken up a great amount of my judicial time. Judging from the past, they will be up and down through the district and appellate courts for some years yet to come. They concern nothing of great social or political—or even judicial interest. The legal problems involved are not new or intellectually stimulating. I have no "desire" to continue to hear and try them. No longer, under the new § 455(a) is there any "duty to sit" imposed on a judge. As the House Judiciary Report on the new § 455 discloses, "No judge, of course, has a duty to sit where his impartiality might reasonably be questioned. However the new test should not be used by judges to avoid sitting on difficult or controversial cases." My decision on Wong's motions, then, must dispassionately and unselfishly flow from the legal sufficiency of the moving papers.

Section 144 sets forth the procedural requirements to be followed by a litigant seeking to disqualify a judge. That section requires that "a timely and sufficient affidavit" be filed, and that "the affidavit shall state the facts and the reasons for the belief that bias and prejudice exists." To be sufficient, specific facts and reasons must be laid out; conclusory allegations and speculations are not sufficient. *Action Realty Co. v. Will,* 427 F.2d 843 (7th Cir. 1970). Since the *facts* stated must be accepted as true, the affidavit must be strictly construed against the party seeking the disqualification. *Beland v. U. S.,* 117 F.2d 958 (5th Cir. 1941).

While nothing in the new § 455 abrogates the requirement of § 144 that the motion to disqualify be timely, I will first determine if Wong's moving papers compel my disqualification under § 455(a) which requires that I recuse myself if my "impartiality

---

**2.** This decision, for purposes of publication, has omitted twenty pages of detailed analysis of the affidavit and moving papers to determine if there were any *facts* set forth therein such as would compel disqualification.

might reasonably be questioned." The thrust of Wong's affidavit is that he now believes that before ever I started the trial in 70–3104 I was already so envious of him, so annoyed with him, bore him such ill will, because he had caused me to lose so much money, because I had cheated him, because I was fearful of being sued by him, etc., that each and every one of my oral findings of March 2, 1973, as to his veracity were generated not from the evidence in that trial but rather from my already hidden bias and prejudice against him, a bias and prejudice that he did not uncover until over three years after the trial!

The standard for disqualification under § 455(a) is whether there have been set forth facts showing a "reasonable factual basis for doubting the judge's impartiality." It must be understood however, that disqualification for lack of impartiality requires a *reasonable* basis, and as set forth in the Senate Report (93–419) on the original bill which was enacted as P.L. 93–512, 88 Stat. 1609, which amended 28 U.S.C. § 455.

> Nothing in this . . . legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants . . . are not entitled to judges of their own choice.

As appears in that report, "Disqualification is a sensitive question of assessing all the facts and circumstances in order to determine whether the failure to disqualify was an abuse of sound judicial discretion."

■ As the laborious analysis of Wong's moving papers shows, his affidavit is not founded upon facts which would cause a reasonable mind to doubt my impartiality[3] and from which it might be fairly inferred that I was biased and prejudiced against Wong before 70–3104 was ever filed, but rather on his own self-created and self-conclusory beliefs and statements, none of which supply the *"reasonable* basis" re-

quired for my disqualification. Wong's affidavit is insufficient to compel my recusal under § 455(a).

Section 455(b)(1) requires that a judge recuse himself "where he has a personal bias or prejudice concerning a party." There is no question that my judicial judgment in 70–3104 unmistakably demonstrates a strong opinion concerning Wong's veracity. As heretofore indicated however, "The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case." *U. S. v. Grinnell Corp., supra,* 384 U.S. at 583, 86 S.Ct. at 1710.

Wong's moving papers are insufficient to show any nonjudicial words, acts or conduct on my part which could be *reasonably* said to evidence any bias or prejudice against Wong prior to March 2, 1973.

■ If more were needed to dispose of Wong's motions, it is supplied by Wong's failure to comply with § 144's procedural requirement that the motion to disqualify be timely. Here Wong has filed it almost four years after the trial and my judgment upon his veracity, and after appeals, remand and further hearings. His only excuse for such prolonged delay was that he did not discover the "evidence" until July 15, 1976. As detailed heretofore, that excuse has no validity in fact. He was fully apprised of all K–R affairs in 1968 and 1973. His motions are untimely, and on that ground also must be denied.[4]

Wong's motion that the judgments in 70–3104 be set aside, likewise must be denied. Apart from the insufficiency of Wong's affidavit under § 455(a) or (b)(1), Section 3 of P.L. 93–512 (now 28 U.S.C. § 455) provides:

> This Act shall not apply to the trial of any proceeding commenced prior to the date of this Act [Dec. 5, 1974], nor to appellate review of any proceeding which

---

3. "This standard is defined in terms of whether there exists a 'reasonable factual basis for doubting the judge's impartiality.'" Senate Report (93–419).

4. *See U. S. v. Hurd,* 549 F.2d 118 (9th Cir. 1977); *In re Millman,* 439 F.2d 412, 414 (4th Cir. 1971); *Scott v. Beams,* 122 F.2d 777, 788–89 (10th Cir. 1941).

was fully submitted to the reviewing court prior to the date of this Act.

Section 455 originally read as follows:

Any justice or judge of the United States shall disqualify himself in any case in which he has a substantial interest, has been of counsel, is or has been a material witness, or is so related to or connected with any party or his attorney as to render it improper, in his opinion, for him to sit on the trial, appeal, or other proceeding therein.

Attorney John P. Frank in his testimony before the Senate Judiciary Committee stated that a judge's decision not to disqualify himself would not provide grounds for a collateral attack on the judgment and could not be raised after the litigation and resulting appeals had terminated.

As noted, these cases were filed in 1970 and 1973, long before § 455 was amended. Nothing in Wong's motions could *possibly* or *speculatively* even approach the fundamental requirements of the old § 455. Wong's motions to set aside the prior judgments must be denied.

■ There is another and side issue to be considered, viz., the propriety of my sitting in determination of the sufficiency of the affidavit. Even before the new § 455 became law, there appeared to be a growing practice for judges against whom motions for disqualification were filed, to refer the motion to another judge for determination. On one occasion I have done so myself. Putting aside the shifting of the judicial workload entailed thereby, it would appear from *Berger, supra,* 255 U.S. at 36, 41 S.Ct. 230, where the issue of the right of a judge to pass upon the sufficiency of the affidavit of his own prejudice was for the first time squarely raised, and from *Grimes v. U. S.,* 396 F.2d 331, 333 (9th Cir. 1968), that "a determination of the sufficiency of the facts and reasons given in the sworn statement *must* be made by the judge to whom the affidavit is presented" (italics in original). This right to pass on the sufficiency of the affidavit has not been modified by the new § 455.

Although the new § 455 substitutes the "objective standard" of disqualification in lieu of the subjective standard of the preceding § 455, nowhere in any of the House or Senate reports is there an indication of any congressional intent to change the right-to-sit rule of *Berger* and *Grimes.*

Section 455(a) was intended to encompass situations where there is an appearance of impropriety such as to raise a reasonable question of a judge's impartiality. It is therefore *possible* that there might arise situations under which a judge might properly refer a motion for disqualification to another judge if he felt that by so doing he might better assist in the promotion of public confidence in the impartiality of the judicial process. The Wong motions do not call for such treatment.

Wong's motions in 70–3104 and 73–3997 are each and all DENIED upon each and all of the grounds above stated.