**UNITED STATES of America,
Plaintiff/Respondent,**

v.

**Leonard PELTIER, Defendant/Petitioner.**

**Crim. No. C77–3003 (Civ. No. A3–82–60).**

United States District Court,
D. North Dakota,
Southeastern Division.

Dec. 29, 1982.

---

Rodney S. Webb, U.S. Atty., D.N.D., Fargo, N.D., Evan L. Hultman, U.S. Atty., N.D. Iowa, Cedar Rapids, Iowa, Richard Vosepka, Asst. U.S. Atty., D. Minn., Minneapolis, Minn., Lynn E. Crooks, Asst. U.S. Atty., D.N.D., Fargo, N.D., for plaintiff/respondent.

William M. Kunstler, New York City, Michael E. Tigar and John J. Privitera, Tigar, Buffone & Doyle, Washington, D.C., Bruce Ellison, Rapid City, S.D., for defendant/petitioner.

## MEMORANDUM AND ORDER

BENSON, Chief Judge.

On June 26, 1975, Special Agents Jack Coler and Ronald Williams of the Federal Bureau of Investigation were killed on the Pine Ridge Indian Reservation in South Dakota while carrying out an official duty assignment on the reservation. While traveling together, in separate cars, on a reservation road, the agents were fired on from a secluded area on high ground some distance away. Both agents were wounded from the distant shots and then "finished off" in executionary fashion by shots fired into their heads at point blank range. Over 125 bullet holes were found in the agents' cars. Leonard Peltier, Robert Robideau, Darrell Butler and James Eagle were charged with first degree murder in a two count indictment alleging violations of 18 U.S.C. §§ 2, 1111, and 1114.[1] Robideau and Butler were tried jointly by a jury before the United States District Court for the Northern District of Iowa and were acquitted.[2] The government subsequently dismissed the charges against James Eagle. Defendant Peltier was a fugitive during the trial in Iowa and was subsequently apprehended and tried by a jury before this court and convicted of first degree murder on both counts.[3] By judgment of this court entered on June 1, 1977, Peltier was sentenced to the custody of the Attorney General of the United States for two consecutive life terms.[4]

There is pending before this court a 28 U.S.C. § 2255 motion by Peltier filed in April 1982, petitioning for vacation of judgment and for a new trial. Briefing on the motion was completed in October 1982. On December 15, Attorney William Kunstler, purporting to represent Peltier, filed a motion under 28 U.S.C. §§ 144 and 455, seeking to have this court disqualify the assigned judge from participating in further proceedings in the case. Kunstler's motion

---

1. 18 U.S.C. § 2 (whoever aids and abets in the commission of an offense against the United States shall be punishable as a principal); 18 U.S.C. § 1111 (murder); 18 U.S.C. § 1114 (protection of officers and employees of the United States).

2. Although the indictment was brought in the District of South Dakota, the trial of the two defendants was transferred to the Northern District of Iowa.

3. Peltier was apprehended in Canada by the Royal Canadian Mounted Police. He resisted extradition, but was ultimately returned to the United States in December 1976, several months after the trial. United States District

Judge Andrew Bogue of the District of South Dakota recused himself pursuant to 28 U.S.C. § 455(a), and the Chief Judge of the United States Court of Appeals for the Eighth Circuit, on December 23, 1976, designated United States District Judge Paul Benson to hear the case. The place of trial was moved to Fargo, North Dakota, on defendant's change of venue motion.

4. The convictions were affirmed on appeal by the Eighth Circuit Court of Appeals, *United States v. Peltier*, 585 F.2d 314 (8th Cir.1978). The United States Supreme Court denied defendant's petition for review on certiorari, 440 U.S. 945, 99 S.Ct. 1422, 59 L.Ed.2d 634 (1979).

was accompanied by an "affirmation" and a certificate of good faith. On the assumption that Kunstler is authorized to file the motion and would, on proper petition, be admitted *pro hac vice* to participate in the pending proceedings, the court will consider the motion for disqualification on its merits.[5]

■ Disqualification of a presiding judge in a case clearly cannot be obtained through the mere filing of a motion. A judge has both the right and duty to address the motion, *see Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921); *United States v. Heldt,* 668 F.2d 1238 (D.C.Cir.1981) (per curiam), *cert. denied,* —— U.S. ——, 102 S.Ct. 1971, 72 L.Ed.2d 440 (1982); *United States v. Anderson,* 433 F.2d 856 (8th Cir.1970). The duty to review arises especially where the judge has a valuable background of experience with a protracted, involved case, *National Auto Brokers Corp. v. General Motors Corp.,* 572 F.2d 953 (2nd Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979); *City of Cleveland v. Cleveland Electric Illuminating Co.,* 503 F.Supp. 368 (N.D.Ohio), *mandamus denied sub. nom. City of Cleveland v. Krupansky,* 619 F.2d 576 (6th Cir.1980) (per curiam).

■ It is a fundamental right of a party to have a neutral and detached judge preside over the judicial proceedings, *Ward v. Village of Monroeville,* 409 U.S. 57, 61–62, 93 S.Ct. 80, 83, 34 L.Ed.2d 267 (1972); *Tumey v. Ohio,* 273 U.S. 510, 520, 47 S.Ct. 437, 440, 71 L.Ed. 749 (1927); *see also United*

*States v. Will,* 449 U.S. 200, 101 S.Ct. 471, 66 L.Ed.2d 392 (1980) (application of Rule of Necessity). 28 U.S.C. §§ 144 [6] and 455 [7] govern the disqualification of judges. The differences in the two statutes appear to be more procedural than substantive. Inasmuch as the grounds for disqualification set out in § 144 are included in § 455, both sections may be considered together, *Phillips v. Joint Legislative Committee,* 637 F.2d 1014 (5th Cir.1981), *cert. denied,* —— U.S. ——, 102 S.Ct. 2035, 72 L.Ed.2d 483, —— U.S. ——, 102 S.Ct. 2233, 72 L.Ed.2d 845, *reh'g. denied,* —— U.S. ——, ——, 102 S.Ct. 2974, 2975, 73 L.Ed.2d 1361 (1982); *United States v. Gigax,* 605 F.2d 507, 512 (10th Cir.1979); *City of Cleveland v. Cleveland Electric Illuminating Co., supra* at 372.

Section 144 expressly conditions relief on the timely filing of a legally sufficient affidavit. *United States v. Sibla,* 624 F.2d 864, 867 (9th Cir.1980). An affidavit must be filed with diligence and may be dismissed if the party unduly delayed in the filing, *Wounded Knee Legal Defense/Offense Committee v. Federal Bureau of Investigation,* 507 F.2d 1281, 1286 (8th Cir.1974); *see also* C. Wright & A. Miller, Federal Practice and Procedure § 3551 (1975). A section 144 motion must also be accompanied by a certificate of good faith by a counsel of record. The requirement is not technical. It is one of the essential requirements of the statute. *Currin v. Nourse,* 74 F.2d 273, 275 (8th Cir.1934). "The phrase 'counsel of record' in the statute means an attorney at law admitted to the bar of the court who has been counsel of record in the case. One

---

**5.** Mr. Kunstler did not sign the 2255 motion nor did he petition for admission to the bar of this court or file a notice of appearance in the case.

**6.** 28 U.S.C. § 144 provides as follows:
   Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
   The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good

cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

**7.** 28 U.S.C. § 455 provides in pertinent part:
   (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
   (b) He shall also disqualify himself in the following circumstances:
   (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding.

who is not a member of the bar cannot be counsel of record even though the record on its face may show he had undertaken to appear as counsel," *id.*

■ The section 144 and 455 motion was not timely filed. As indicated, the section 2255 motion was filed in April, and came at issue in October, at which time the court took the matter under advisement. On the eve of the determination of the 2255 motion, defendant, without explanation for the delay, filed the motion to disqualify. *See National Auto Brokers Corp. v. General Motors,* 572 F.2d 953 (2nd Cir.1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979) (affidavit of prejudice untimely where it was based on facts that were known to counsel four months prior to time affidavit was filed); *Hawaii-Pacific Venture Capital Corp. v. Rothbard,* 437 F.Supp. 230, 235 (D.Hawaii 1977), *appeal dismissed,* 564 F.2d 1343 (9th Cir.1978) (affidavit filed four years after trial, appeals, and further hearings was deemed untimely when only excuse for delay was that the "evidence" was not sooner discovered).

The section 144 motion *must allege facts* indicating that actual bias or prejudice exists, *see United States v. Gigax, supra* at 510–11; *Parrish v. Board of Commissioners,* 524 F.2d 98, 100 (5th Cir.1975) (en banc), *cert. denied,* 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Duplan Corp. v. Deering Milliken, Inc.,* 400 F.Supp. 497 (D.S.C. 1975).

■ Allegations of "bias or prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case," *United States v. Grinnell Corp.,* 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966); *see also Berger v. United States, supra,* 255 U.S. at 31, 41 S.Ct. at 232. "[T]he alleged bias must be 'personal,' as distinguished from judicial, in nature," *Phillips v. Joint Legislative Committee, supra* at 1020. "[A] motion for disqualification ordinarily may not be predicated on the judge's rulings in the instant case or in related cases, nor on a demonstrated tendency to rule in any particular way, nor on a particular judicial leaning or attitude derived from his experience on the bench," *id.*[8]

The "affirmation" filed in this case contends without specificity as to time, place or manner that the judge of this court participated in ex parte communications with members of the Department of Justice, the prosecution staff, and the F.B.I. The inference appears to have been drawn largely from events that took place before the judge of this court had any connection with the case, which events need not be considered in ruling on the motion. Defendant's contentions are basically two fold: (1) a *suggestion* that this court participated in ex parte communications with the prosecution concerning the date of trial and the subject matter of an intra-agency F.B.I. memorandum sent from Rapid City, South Dakota shortly after the acquittal of Robideau and Butler, which memorandum speculated on the reasons for the acquittals[9] and (2) an allegation that this court had ex parte communications with the F.B.I. and United States Marshal's Service concerning security arrangements for the trial at Fargo. Information relative to the date a case may likely be called for trial, if available,

---

**8.** *See also United States v. Grinnell Corp., supra; United States v. Anderson, supra* at 860; *United States v. Martorano,* 620 F.2d 912 (1st Cir.), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980) ("mere fact that a judge entertains a motion for a new trial [under § 2255] in a case over which he presided initially does not reasonably call into question his impartiality. Indeed, we have indicated it may often be advantageous to have the original judge continue on a case because of his familiarity with earlier proceedings," *id.* at 919); *United States v. Smith,* 337 F.2d 49 (4th Cir. 1964) (same), *cert. denied,* 381 U.S. 916, 85 S.Ct. 1542, 14 L.Ed.2d 436 (1965); *Common-*

*wealth of Pennsylvania v. Local Union 542,* 388 F.Supp. 155 (E.D.Pa.1974) (a judge cannot be disqualified merely because he believes in upholding the law, *id.* at 159).

**9.** The alleged memo, dated July 29, 1976, stated in part:

Set forth below are some of the reasons possibly leading to acquittal.

1. During course of trial, the court, applying "collateral estoppel", prohibited government from entering into evidence certain key exhibits; six casings fired from SA Coler's revolver, six casings fired from SA Williams'

**890**

may always be obtained from the office of the Clerk of Court whether the inquiry came from an interested party in the case or from a noninvolved citizen. The judiciary is provided by law with security services, and a judge would be derelict in his duty if he failed to consider, or in appropriate cases respond to security recommendations.

Counsel's "affirmation" [10] in support of defendant's motion fails to state facts to support his conclusory inference that this court had ex parte communications with the prosecution or that it made its rulings and orders in the case on information derived from other than judicial sources. Defendant has failed to identify or demonstrate any personal or extrajudicial bias or prejudice on the part of this court, or state any facts from which the impartiality of the presiding judge in the case might reasonably be questioned. The "affirmation" in support of defendant's motion, which the court will construe to be an affidavit, being

legally insufficient, and the motion being untimely, IT IS ORDERED DENIED.

---

revolver. These items located in one-room cabin where defendant Butler was arrested September 5, 1975. In addition, an M–1 Rifle linked to crime scene by shell casings, located in same cabin where Butler was arrested was not allowed to be connected with defendant Butler under this ruling. The judge's ruling in this matter is inconsistant [sic] with previous judicial rulings.

2. Over strong objections by government, the defense was allowed freedom of questioning of witnesses raising innuendo with irrelevant, immaterial and heresay [sic] testimony.

3. The court allowed testimony concerning past activities of the FBI relating to the COINTEL PRO and subsequently allowed the Church report into evidence.

4. The court rulings relating to Brady and Jencks material forced the government to furnish the defense with all FD–302's prepared by special agents who testified for the government. This again is inconsistent with previous interpretations of the Jencks rule.

5. The judge recessed trial for ten days following presentation of government's case to attend a judicial conference. This allowed the defense additional time to rebut government's case and caused a greater time span from the government's presentation to time of deliberations by the jury.

6. The court continually overruled government objections and allowed irrelevant evidence; for example, introduction of seven Bureau documents (six teletypes and one terrorist digest) which were disseminated at

headquarters level to other law enforcement agencies. As a result, the defense inferred the FBI created a climate of fear on the reservation which preciptated [sic] the murders. The defense, through the introduction of these documents, attempted to reduce the credibility of special agent testimony.

7. The defense was uncontrolled in its dealings with the news media due to lack of "gag" rule, however, the prosecution was unable to comment to the news media.

8. The jury was not sequestered, therefore, it had available numerous headlines adverse to the government and the results of daily conferences with news media by defense counsel. During trial numerous press reports detrimental to the FBI in unrelated matters appeared in local newspaper.

9. It appeared that the jury had a difficult time putting the case together because of the numerous sidebars which detracted from the presentation and flow of the case to the jury, noting that this case is most complicated.

. . . . .

It is noted the defense utilized during the trial the services of nine attorneys, many of which were vastly experienced in criminal defense. *See* defendant's exhibit A filed in support of the affidavit for disqualification.

10. Counsel apparently chose to affirm rather than declare, certify, verify or state as required by 28 U.S.C. § 1746(2), or file a sworn affidavit as required by 28 U.S.C. § 144.