CITY OF CLEVELAND, Plaintiff,

v.

The CLEVELAND ELECTRIC ILLUMI-NATING COMPANY, Defendant.

Civ. A. No. C75–560.

United States District Court,
N. D. Ohio, E. D.

March 8, 1980.

William B. Norris, Hahn, Loeser, Freedheim, Dean & Wellman, Thomas E. Wagner, Director of Law, Cleveland, Ohio, for plaintiff.

John Lansdale, James P. Murphy, Squire, Sanders & Dempsey, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

KRUPANSKY, District Judge.

This matter is presently before the Court on the plaintiff City of Cleveland's motion to disqualify the Honorable Robert B. Krupansky pursuant to the due process clauses of the Fifth and Fourteenth Amendments to the United States Constitution and the provisions of 28 U.S.C. § 455 (Supp.1979). Defendant Cleveland Electric Illuminating Company has responded in opposition.

A review of the applicable authorities discloses that this tribunal has an affirmative obligation to assess in the first instance the legal sufficiency of the motion at bar and the underlying supporting affidavits. *Albert v. United States District Court for the Western District of Michigan*, 283 F.2d 61, 62 (6th Cir. 1960), *cert. denied*, 365 U.S. 828, 81 S.Ct. 713, 5 L.Ed.2d 706 (1961); *United States v. Bray*, 546 F.2d 851, 857 (10th Cir. 1976); *Davis v. Board of School Commissioners of Mobile County*, 517 F.2d 1044, 1051 (5th Cir. 1975), *cert. denied*, 425 U.S. 944, 96 S.Ct. 1685, 48 L.Ed.2d 188 (1976); *Hayes v. National Football League*, 463 F.Supp. 1174, 1178 (C.D.Cal.1979); *Hawaii-Pacific Venture Capital Corp. v. Rothbard*, 437 F.Supp. 230, 236 (D.Hawaii), *appeal dismissed*, 564 F.2d 1343 (9th Cir. 1977). As properly stated by the Tenth Circuit Court of Appeals in *United States v. Olander*, 584 F.2d 876, 883 (10th Cir. 1978):

> It was not improper for Judge Boldt to pass on the motion to disqualify. The law is clear that he must determine whether the affidavit is sufficient, if true, to require that he recuse himself. Only if he finds it thus sufficient is he required to have another judge hear the motion.

*See United States v. Azhocar,* 581 F.2d 735, 738–39 (10th Cir. 1978), *cert. denied,* 440 U.S. 907, 99 S.Ct. 1213, 59 L.Ed.2d 454 (1979); *United States v. Haldeman,* 559 F.2d 31, 131 (D.C.Cir.1976), *cert. denied,* 431 U.S. 933, 97 S.Ct. 2641, 53 L.Ed.2d 250 (1977).

■ In addition to imposing upon the trial court the nondelegable duty of passing on the legal sufficiency of a disqualification request, existing legal precedent counsels that a "trial judge has as much obligation not to recuse himself when there is no reason to do so as he does to recuse himself when the converse is true."[1] *United States v. Bray, supra,* 546 F.2d at 857. *Accord: In re Union Leader Corp.,* 292 F.2d 381, 391 (1st Cir.), *cert. denied,* 368 U.S. 927, 82 S.Ct. 361, 7 L.Ed.2d 190 (1961); *Wolfson v. Palmieri,* 396 F.2d 121, 124 (2d Cir. 1968); *Smith v. Danyo,* 441 F.Supp. 171, 175 (M.D. Pa.1977), *aff'd,* 585 F.2d 83 (3d Cir. 1978); *Andrews, Mosburg, Davis, Elam & Bixler, Inc. v. General Insurance Company of America,* 418 F.Supp. 304, 307 (W.D.Okla. 1976). Underlying this obligation is the recognition that "the granting of a motion to recuse necessarily results in a waste of the judicial resources which have already been invested in the proceeding." *In re International Business Machines Corp.,* 618 F.2d 923 at 933 (2d Cir. 1980). Thus, disqualification is not favored in instances where, as here, a single judge has acquired by experience, familiarity with a protracted, involved case which could not easily be passed on to a second judge.[2] *Bradley v. School Board of City of Richmond, Virginia,* 324 F.Supp. 439, 449 (E.D.Va.1971). As stated by the Second Circuit Court of Appeals:

> The mere filing of an affidavit of prejudice does not require a judge to recuse himself. On the contrary, we have held that a judge has an affirmative duty to inquire into the legal sufficiency of such an affidavit and not to disqualify himself unnecessarily, particularly "where the request for disqualification was not made at the threshold of the litigation and the judge has acquired a valuable background of experience." *Rosen v. Sugarman,* 357 F.2d 794, 797–98 (2d Cir. 1966).

*National Auto Brokers v. General Motors Corp.,* 572 F.2d 953, 958 (2d Cir. 1978), *cert. denied,* 439 U.S. 1072, 99 S.Ct. 844, 59 L.Ed.2d 38 (1979). *Cf. Kelley v. Metropolitan County Board of Education,* 479 F.2d 810, 811 n. 1 (6th Cir. 1973).

In support of the instant motion, plaintiff has submitted for the Court's consideration a total of eight affidavits, five of which are testimonials of individuals who have provided or who currently provide the plaintiff with legal representation in the within ac-

---

1. This is not to imply that this Court adheres to the so-called "duty to sit" principles which obtained in the federal judiciary prior to the 1974 enactment of new section 28 U.S.C. § 455, upon which the plaintiff largely predicates the instant motion. The Court is fully cognizant of the fact that new section 455 was expressly intended by its drafters to abrogate the "duty to sit" doctrine. S.Rep.No.93–419, 93d Cong., 1st Sess., 1973, p. 5; H.Rep.No.93–1453, 93d Cong. 2d Sess., reprinted in U.S.Code Cong. & Admin.News, pp. 6351, 6355 (1974). Nonetheless, it can be said that a district judge continues to have "an obligation to the parties in a case, and to his fellow judges, not to recuse himself *when valid grounds are not raised."* *W. Clay Jackson Enterprises, Inc. v. Greyhound Leasing & Financial Corp.,* 467 F.Supp. 801, 803 (D.P.R.1979) (emphasis supplied). In this limited sense, a somewhat circumscribed "duty to sit" remains. *Blizard v. Frechette,* 601 F.2d 1217, 1220–21 (1st Cir. 1979), *aff'g Blizard v. Fielding,* 454 F.Supp. 318 (D.Mass.1978).

2. A review of the instant record discloses that in the course of these proceedings this Court has conducted approximately twenty-three hearings, issued eighty-two written orders, and prepared an additional forty-one written memorandum orders. It should also be noted that plaintiff herein has sought extensive appellate review, prosecuting appeals from this Court's decrees on five separate occasions, one of which culminated in the City's unsuccessful petition to the United States Supreme Court for certiorari. Incidentally, of the foregoing appeals, three have resulted in this Court being sustained on the merits, a fourth dismissed as improvident pursuant to Rule 8, Rules of the Sixth Circuit, and a fifth dismissed pursuant to the stipulation of the parties. In no instance has a mandate from this tribunal been reversed or otherwise modified on appeal.

tion.[3] The remaining affiants, Robert H. Holden and David T. Abbott, are former reporters for the Cleveland Plain Dealer who apparently had occasion to observe certain proceedings in the instant cause.

■ In assessing the affidavits, the Court observes that for purposes of the present inquiry, "all facts stated with particularity are to be taken as true." *United States v. Haldeman, supra*, 559 F.2d at 131. However, "[a]ssertions merely of a conclusionary nature are not enough, nor are opinions or rumors." *Id.* at 134 (footnotes omitted). *Accord: United States v. Bray, supra*, 546 F.2d at 857; *United States v. Corr*, 434 F.Supp. 408, 412–13 (S.D.N.Y.1977); *Smith v. Danyo, supra*, 441 F.Supp. at 175; *Hayes v. National Football League, supra*, 463 F.Supp. at 1179. Thus, in order for an affidavit to be sufficient, "specific facts and reasons must be laid out; conclusory allegations and speculations are not sufficient." *Hawaii-Pacific Venture Capital Corp. v. Rothbard, supra*, 437 F.Supp. at 234. *See Sperry Rand Corp. v. Pentronix, Inc.*, 403 F.Supp. 367, 371–372 (E.D.Pa.1975).

An appraisal of the submissions under the foregoing principles discloses that the essential thrust of the plaintiff's motion is that the attitude, demeanor, rulings and other written opinions of the Court infer " . . . that the impartiality of the Honorable Robert B. Krupansky toward the City of Cleveland may reasonably be questioned". *Plaintiff's Motion for Disqualification*. Plaintiff charges in this regard that the City has been subjected throughout the course of these proceedings to a disproportionate number of adverse and allegedly erroneous rulings, many of which have pertained to the pursuit of pretrial discovery. Plaintiff further predicates the motion at bar upon the impressions and perceptions of a number of the aforesaid affiants who, having observed or participated in various judicial proceedings undertaken in connection with the instant action, maintain that the Court's general demeanor evidences a clear appearance of partiality. Plaintiff accordingly urges that disqualification herein is warranted in order to preserve said party's constitutional right to a fair trial and to comport with the mandate of 28 U.S.C. § 455(a) (Supp.1979), which provides in relevant part as follows:

> Any . . . judge . . . of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

■ To properly assess the legal sufficiency of the instant motion under § 455, it is incumbent upon the Court, for the reasons developed more fully below, to examine a concomitant provision, 28 U.S.C. § 144, and the judicial constructions thereunder. This statute provides:

> Whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding.
>
> The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time. A party may file only one such affidavit in any case. It shall be accompanied by a certificate of counsel of record stating that it is made in good faith.

28 U.S.C. § 144. Section 144 explicitly requires that a motion for recusal must be timely made. In addition, the statutory provision has been authoritatively construed to mandate disqualification only where the prejudice or bias in question is attributable to an extrajudicial source. As stated by the Supreme Court in *United States v. Grinnell Corp.*, 384 U.S. 563, 583, 86 S.Ct. 1698, 1710, 16 L.Ed.2d 778 (1966):

---

**3.** A sixth affiant, William A. LeFaiver, is an associate of the law firm currently representing the City herein, Hahn, Loeser, Freedheim, Dean & Wellman.

The alleged bias and prejudice to be disqualifying must stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case. *Berger v. United States*, 255 U.S. 22, 31, 41 S.Ct. 230, 232, 65 L.Ed. 481. *Accord: United States v. Azhocar, supra*, 581 F.2d at 739; *Smith v. Danyo, supra*, 585 F.2d at 87; *United States v. Bray, supra*, 546 F.2d at 859. *See Ex Parte American Steel Barrel Co.*, 230 U.S. 35, 43–44, 33 S.Ct. 1007, 1010, 57 L.Ed. 1379 (1913).

The applicability of the foregoing principles to new section 455 has become increasingly apparent. Recent authorities considering the relationship between sections 144 and 455 have determined, upon reviewing the pertinent legislative history, that these related provisions must be construed *in pari materia. Davis v. Board of School Commissioners, supra*, 517 F.2d at 1051–52; *United States v. Olander, supra*, 584 F.2d at 882; *United States v. Carignan*, 600 F.2d 762, 763–64 (9th Cir. 1979); *In re International Business Machines Corp., supra*, 618 F.2d at 928; *Hawaii-Pacific Venture Capital Corp. v. Rothbard, supra*, 437 F.Supp. at 233. *See Hepperle v. Johnston*, 590 F.2d 609, 613–14 (5th Cir. 1979); *Lazofsky v. Sommerset Bus Company, Inc.*, 389 F.Supp. 1041, 1044–45 (E.D.N.Y.1975). Of particular significance to the instant controversy, recent case authorities have specifically concluded that disqualification under section 455(a) must be predicated, as previously under section 144, upon extrajudicial rather than judicial conduct. A review of the applicable authorities is instructive.

The seminal case addressing the issue of the proper relationship between the aforesaid concomitant provisions is the Fifth Circuit Court of Appeals' opinion in *Davis v. Board of School Commissioners, supra.* Therein, the Court of Appeals reasoned:

The quoted language, *supra*, in § 455 is new to the federal law of disqualification and we must determine whether Congress intended to overrule the gloss placed on § 144, and impliedly on § 455, by court decisions that it applies only to conduct which runs against a party and not the lawyer, *cf. United States ex rel. Wilson v. Coughlin*, [7 Cir.] *supra*, [472 F.2d 100] at 104; *Geibe v. Pence*, [9 Cir.], *supra* [431 F.2d 942] at 943; *see also*, Annot., 23 A.L.R.3d 1416; and that disqualification results from extra-judicial conduct rather than from matters arising in a judicial context. [citations omitted]. We find no suggestion in the legislative history that these decisions were being overruled or in anywise eroded. The new language was designed to substitute the reasonable factual basis—reasonable man test in determining disqualification for the subjective "in the opinion of the judge" test in use prior to the amendment. *Cf. Kinnear-Weed Corp. v. Humble Oil & Refining Corp.*, 5 Cir. 1971, 441 F.2d 631, 635. It was also intended to overrule the so-called duty to sit decisions. *See Edwards v. United States*, 5 Cir., 1964, 334 F.2d 360. The abuse of sound judicial discretion test continues to obtain on appellate review. H.Rep.No. 93–1453, 1974 U.S.Code Cong. & Admin. News pp. 6351, 6355.

Construing §§ 144 and 455 *in pari materia* we believe that the test is the same under both. We thus hold that an appellate court, in passing on questions of disqualification of the type here presented, should determine the disqualification on the basis of conduct which shows bias or prejudice or lack of impartiality by focusing on a party rather than counsel. The determination should also be made on the basis of conduct extra-judicial in nature as distinguished from conduct within a judicial context. This means that we give §§ 144 and 455 the same meaning legally for these purposes, whether for purposes of bias and prejudice or when the impartiality of the judge might reasonably be questioned.

*Davis v. Board of School Commissioners, supra*, 517 F.2d at 1052. The Fifth Circuit's construction of § 455(a) enunciated in *Davis* was expressly approved by the District of Columbia Circuit Court of Appeals, writing in *United States v. Haldeman, supra*, 559 F.2d at 132–33 n. 297:

For a long time before enactment of new § 455(a) in 1974, the judicial understanding of § 144 and old § 455 was that they were to be confined in operation to extrajudicial conduct or conditions. *See* note 296 *supra* and accompanying text. Nothing we have observed in the legislative history of new § 455(a) suggests that this construction was to be overturned. The Fifth Circuit has concluded that new § 455(a) is to be similarly interpreted, *Davis v. Board of School Comm'rs*, 517 F.2d 1044, 1052 (5th Cir. 1975). Absent clearer guidance as to the congressional intent, we agree...

The Court of Appeals in *Haldeman* also observed that the requirement that disqualification be premised upon partiality emanating from an extrajudicial source was supported by compelling policy considerations:

> Most of the activities relied upon were exercises of judicial functions. Viewed in their individual contexts, we do not consider them improper when they occurred, nor is it argued that they were. Should the appearance-of-impropriety standard be woodenly applied to work a judge's disqualification because of earlier legal adjudications entirely proper when made, the result would be truly amazing. As one judge has stated,

> > [i]f the words "impartiality might reasonably be questioned" and "avoid impropriety and the appearance of impartiality" were to be interpreted to encompass judicial rulings in the course of a trial or other proceeding, ... then there would be almost no limit to disqualification motions and the way would be opened to a return to "judge shopping", a practice which has been for the most part universally condemned. Certainly every ruling on an arguable point during a proceeding may give "the appearance of" partiality, in the broadest sense of those terms, to one party or the other.

> *Lazofsky v. Sommerset Bus Co.*, 389 F.Supp. 1041, 1044 (E.D.N.Y.1975)...

The appearance-of-impropriety standard in terms summons a disqualification, not merely when the judge's impartiality might somehow be questioned, but only when it may reasonably be questioned. We think reasonableness of the challenge must take due account of the effect which its acceptance will have on the judicial process. So drastic would be the impact that we are unwilling to ascribe to ethical and legislative formulators of the standard a purpose to direct it toward judicial rulings on questions of law.

*United States v. Haldeman*, 559 F.2d at 133, n. 297.

The most recent pronouncement on the subject is the Second Circuit Court of Appeals' well-reasoned opinion in *In re International Business Machines Corp., supra*, wherein the Court of Appeals wrote:

> Section 455(b) lists five instances which mandate the recusal of a judge. The only relevant subdivision is section 455(b)(1), which requires recusal where the judge "has a personal bias or prejudice concerning a party..." This language is taken directly from section 144. We agree with the Fifth Circuit's holding in *Davis v. Board of School Commissioners*, 517 F.2d 1044, 1052 (5th Cir. 1975), cert. denied, 425 U.S. 944 [96 S.Ct. 1685, 48 L.Ed.2d 188] (1976), that, "[c]onstruing §§ 144 and 455 *in pari materia* we believe the test is the same under both... The determination should be made on the basis of conduct extrajudicial in nature as distinguished from conduct within a judicial context." ...

IBM urges that disqualification is also required under section 455(a). Section 455(a) provides for recusal where the judge's "impartiality might reasonably be questioned." This section sets up an objective standard for recusal, creating the so-called "appearance of justice" rule... However we cannot agree that adverse rulings by a judge can per se create the appearance of bias under section 455(a). A trial judge must be free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the impression of bias. Ju-

dicial independence cannot be subservient to a statistical study of the calls he has made during the contest. As Mr. Justice Frankfurter noted in *Wilkerson v. McCarthy*, 336 U.S. 53, 65 [69 S.Ct. 413, 419, 93 L.Ed. 497] (1949) (Frankfurter, J., concurring), "A timid judge, like a biased judge, is intrisically a lawless judge." We conclude that under section 455(a) the bias to be established must be extrajudicial and not based upon in-court rulings.

*In re International Business Machines Corp.*, at 928–929 (footnotes omitted). *Accord: Hepperle v. Johnston, supra,* 590 F.2d at 614; *Hawaii-Pacific Venture Capital Corp. v. Rothbard, supra,* 437 F.Supp. at 233–34.

The appellate determination in the IBM litigation is of particular relevance to the instant controversy, as the substantive charges of bias advanced in support of the motion to disqualify Chief Judge Edelstein in that proceeding closely resemble the allegations presented herein. The specific charges therein were summarized by the Second Circuit as follows:

1) The Chief Judge has become an advocate for the plaintiff, disrupting the direct testimony of IBM's witnesses, cross-examining IBM witnesses himself, shielding plaintiff's witnesses from cross-examination, and routinely abusing IBM's witnesses and counsel.

2) His rulings on questions of evidence, procedure and discovery have been inconsistent and the general conduct of the trial has been in favor of the Government and against law.

3) He has expressed an antipathy toward IBM counsel which manifests an attitude that they can do no right.

4) He has deliberately attempted to create a record that cannot be subject to full and adequate appellate review by refusing to file papers submitted by IBM, refusing to hand down timely rulings in matters of importance to IBM, and secretly making alterations in and deletions from the trial transcript.

*In re International Business Machines Corp.*, at 927. IBM sought to support the foregoing contentions by adducing statistical proof purporting to demonstrate "that 86% of the some 10,000 oral motions made and 74 out of 79 written motions have been decided against the petitioner and in favor of the Government." *Id.*, 929. The Court of Appeals found such statistical evidence entirely unpersuasive, stating in pertinent part:

It seems evident that statistics alone, no matter how computed, cannot establish extrajudicial bias. There is no authority for, and no logic in, assuming that either party to a litigation is entitled to a certain percentage of favorable decisions.

*Id.*, at 929.

More fundamentally, the Second Circuit affirmatively found that the petitioner failed to sustain its burden of demonstrating the existence of the requisite extrajudicial animus, stating in part:

IBM has not shown and does not purport to establish or identify any personal connection, relationship or extrajudicial incident which accounts for the alleged personal animus of the trial judge. IBM's claim of prejudice is based completely on Chief Judge Edelstein's conduct and rulings in the case at hand. These we have repeatedly held form no basis for a finding of extrajudicial bias. Thus in *King v. United States,* 576 F.2d 432, 437 (2d Cir. 1978) we stated:

"The grounds urged for disqualification are for the most part rulings made by (the trial judge) during the trial or statements made by him in the course of his judicial duties... Nothing of this kind, what the judge has learned from or done in the proceeding before him, is any basis for disqualification; to be sufficient for disqualification the alleged bias or prejudice must be from an extrajudicial source."

*In re International Business Machines Corp.*, at 929.

Accordingly, the Court of Appeals was constrained to conclude that "the rulings and conduct of the trial judge complained

of here are legally insufficient to warrant recusal under Title 28, §§ 144, 455 or under the due process clause of the Fifth Amendment of the United States Constitution." *In re International Business Machines Corp.*, at 932.

■ Applying the foregoing principles, this Court, upon a careful review of the record, is similarly constrained to conclude that the instant motion, as supported by the aforementioned affidavits, fails to present legally sufficient grounds for disqualification. A review of the record in its entirety discloses that plaintiff's moving papers are entirely devoid of specific factual allegations which even suggest, much less demonstrate, that the Court's alleged partiality emanates from an extrajudicial source. To the contrary, the instant motion is predicated entirely upon conduct undertaken in a purely judicial context. Accepting, *arguendo*, as true the plaintiff's charges that the City has been subjected to a disproportionate number of adverse and erroneous rulings; that this Court has, to the plaintiff's detriment, mismanaged pretrial discovery;[4]

---

**4.** It is beyond peradventure that it is the duty of the trial judge to supervise, manage and control pretrial discovery, for he is the single individual who, in the exercise of this purely judicial discipline, can do so effectively. Indeed, a failure of the trial court to affirmatively exercise this duty may result in a perversion of the discovery process. The exercise of this fundamental judicial function rises to a level of critical significance where, as here, a court is confronted with a multiple party antitrust case wherein the hostile adversaries have demonstrated an abuse of the orderly discovery process and a disdain for a self-imposed cooperative pretrial discovery schedule. As stated by the Supreme Court in *Herbert v. Lando*, 441 U.S. 153, 176, 99 S.Ct. 1635, 1649, 60 L.Ed.2d 115 (1979):

> The Court has more than once declared that the deposition-discovery rules are to be accorded a broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials. *Schlagenhauf v. Holder*, 379 U.S. 104, 114–115, 85 S.Ct. 234, 241, 13 L.Ed.2d 152 (1964); *Hickman v. Taylor*, 329 U.S. 495, 501, 507, 67 S.Ct. 385, 388, 391, 91 L.Ed. 451 (1947). But the discovery provisions, like all of the Federal Rules of Civil Procedure, are subject to the injunction of Rule 1 that they "be construed to secure the just, speedy, and *inexpensive* determination of every action." (Emphasis added.) To this end, the requirement of Rule 26(b)(1) that the material sought in discovery be "relevant" should be firmly applied, and the district courts should not neglect their power to restrict discovery where "justice requires [protection for] a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." Fed.Rule Civ. Proc. 26(c). With this authority at hand, judges should not hesitate to exercise appropriate control over the discovery process.

*See also Admiral Theatre Corp. v. Douglas Theatre Co.*, 585 F.2d 877, 889 (8th Cir. 1978) wherein the Court of Appeals intimated:

> The district court must be free to use and control pretrial procedure so to insure the orderly administration of justice. *Link v. Wabash R. R.*, 291 F.2d 542, 547 (7th Cir. 1961), *aff'd*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). In his pretrial role, the district judge must at times assume the active part of "director of litigation * * * [free to] strip the controversy of nonessentials, and to mold it into such form as will make it possible to dispose of the contest properly with the least possible waste of time and expense." *Buffington v. Wood*, 351 F.2d 292, 298 (3d Cir. 1965), *quoting from* Committee on Pretrial Procedure to the Judicial Conference of the District of Columbia, *Report*, 4 Fed.Rules Serv.L.R. 47 (1941). The district court's discretionary power to limit discovery and proof at trial extends to complex litigation involving lengthy discovery procedures. *See Aviation Specialties, Inc. v. United Technologies Corp.* [5th Cir.], *supra*, 568 F.2d [1186] at 1189–90; 1 Pt. 2 *Moore's Federal Practice* ¶ 2.40 (2d ed. 1978) (hereafter Manual for Complex Litigation).

In his concurring opinion, Circuit Judge Lewis of the Tenth Circuit similarly stated in *Paramount Film Distributing Corp. v. Civic Center Theatre*, 333 F.2d 358, 362–63 (10th Cir. 1964):

> It is the clear duty of the trial court to control discovery under Rule 34 and a failure or refusal to do so is an abdication of judicial function so patent as to subject the mischief to the extraordinary remedy of appellate writ. But the technique of control is a matter of discretion, skill and judgment lying peculiarly within the trial court's grasp and subject to many variations depending upon the particular case and its problems. Complaints as to technique of control cannot be reached by extraordinary writ. In the case at bar, the trial court granted appellees' motion to produce *in toto* stating that he believed broad discovery was necessary in antitrust cases and that he would not "interfere." Our decision assumes, and I have no doubt, properly so, that the trial court's statement was but a generalization, an indication that the court considered wide latitude initially desirable as a matter of considered judgment.

and that this tribunal's courtroom demeanor, as evidenced solely in the course of judicial proceedings undertaken herein, has reflected a lack of impartiality, this Court cannot, consistent with the governing authorities, find these charges "to be of the stuff upon which one can sensibly premise extrajudicial bias." *Id.,* at 931. As was the case in the IBM litigation, the plaintiff's failure herein to "establish or identify any personal connection, relationship or extrajudicial incident which accounts for the alleged personal animus of the trial judge" renders the City's moving papers legally insufficient to warrant disqualification. *Id.,* at 928.

The Sixth Circuit Court of Appeals has consistently recognized the impropriety of predicating disqualification determinations upon the judicial conduct of the trial court. Indeed, the Sixth Circuit in the case of *Oliver v. Michigan State Board of Education,* 508 F.2d 178 (6th Cir. 1974), *cert. denied,* 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975) was confronted with a recusal motion premised upon allegations substantially similar to those advanced herein. The Court of Appeals stated:

> Appellants' affidavit included allegations that the District Judge held "an unshaka-

> But certain it is that if, as the film companies apprehend, the course of the trial court's order results in a clear frustration of the intended purpose of discovery by imposing an overwhelming and unjustifiable physical and financial burden upon them, the trial court should then impose careful limitation.
> Rule 34, if not properly supervised, can also be used as an instrument of abuse under circumstances not amounting to an abandonment of the judicial function by the court. *Link v. Wabash R. R. Co.,* 291 F.2d 542, 547 (7th Cir. 1961), aff'd, 370 U.S. 626, 629, 82 S.Ct. 1386, 1388, 8 L.Ed.2d 734 (1962) counsels:
> Pre-trial procedure has become an integrated part of the judicial process on the trial level. Courts must be free to use it and to control and enforce its operation. Otherwise, the orderly administration of justice will be removed from control of the trial court and placed in the hands of counsel. We do not believe such a course is within the contemplation of the law.
> *See also Lewis v. Texaco, Inc.,* 527 F.2d 921, 926 (2d Cir. 1975); *Blum v. Gulf Oil Corporation,* 597 F.2d 936, 938 (5th Cir. 1979); *H. K. Porter Co., Inc. v. Goodyear Tire & Rubber Co.,*

ble conviction" that there is no distinction between de facto and de jure segregation for constitutional purposes; that the relief granted was biased in favor of the black plaintiffs and prejudicial to poor whites; that personal bias for the plaintiffs was demonstrated by the manner in which the parties were characterized and the treatment accorded the parties, counsel, and witnesses; that an irrelevant and erroneous finding was made with regard to certain advice given by the defendants' attorney; that a Motion for Protective Order filed by plaintiffs was given improper treatment; and that there was undue delay in holding the trial on the merits of the case. All these allegations relate to, and are sought to be supported by, proceedings in and the rulings by the District Court.

Treating the facts alleged in the affidavit as true and looking only to the sufficiency of those facts in considering the recusal motion, *Berger v. United States,* 255 U.S. 22, 41 S.Ct. 230, 65 L.Ed. 481 (1921), we find that the allegations do not suffice to support a claim of personal bias or prejudice on the part of the District Judge. As we have stated previously:

536 F.2d 1115, 1119 (6th Cir. 1976); *Scroggins v. Air Cargo, Inc.,* 534 F.2d 1124 (5th Cir. 1976), *reh. denied,* 540 F.2d 1085 (1976); *Wilver v. Fisher,* 387 F.2d 66, 69 (10th Cir. 1967).

It is abundantly clear from the foregoing authorities that this tribunal's conditioning of future discovery upon completion of all outstanding discovery and a showing of need for additional discovery was a reasonable judicial act undertaken pursuant to the Court's well-recognized duty to direct, manage and supervise the discovery process.

While the Court recognizes that the plaintiff's specific factual allegations must for the purposes of this inquiry be taken at face value, it is nonetheless this Court's firm conviction that the City, having consciously elected not to pursue orderly pretrial discovery within the mandates of this trial court, which decrees were designed to bring order from the chaos that was precipitated at an early stage of this litigation by the discovery abuses perpetrated by all parties, cannot now on the eve of trial justifiably complain but must instead accept the natural consequences of its voluntary conduct.

The bias or prejudice which will disqualify a judge must be "personal" bias or prejudice as distinguished from a judicial one . . .

It is not sufficient if the alleged bias or prejudice arises out of the judge's background and associations rather than his appraisal of the complaining party personally . . .

Nor is it sufficient that the alleged bias or prejudice arises from the judge's view of the law, which may have been expressed by him in some prior case . . .

A judge is not disqualified merely because he believes in upholding the law, even though he says so with vehemence . . .

Adverse rulings during the course of the proceedings are not by themselves sufficient to establish bias and prejudice. *Knapp v. Kinsey*, 232 F.2d 458, 466 (6th Cir. 1956).

*Oliver v. Michigan State Board of Education*, 508 F.2d at 180.

While the disqualification sought in *Oliver* was predicated upon section 144, a Sixth Circuit panel has recently applied the principles of *Oliver* to a recusal appeal premised upon new section 455(a), stating in *Woodruff v. Tomlin*, 593 F.2d 33, 44 (6th Cir. 1979), *reh. en banc granted*, May 24, 1979:

> We find no error in the District Judge's denial of a motion filed by the plaintiffs to require his recusal under 28 U.S.C. § 455(a). Such recusal cannot be based on decisions or rulings of a Judge. *Oliver v. Michigan State Bd. of Educ.*, 508 F.2d 178 (6th Cir. 1974), cert. denied, 421 U.S. 963, 95 S.Ct. 1950, 44 L.Ed.2d 449 (1975).

*Accord: Hepperle v. Johnston, supra*, 590 F.2d at 614; *United States v. Azhocar, supra*, 581 F.2d at 739; *Smith v. Danyo, supra*, 441 F.Supp. at 180.

■ The foregoing authorities make it abundantly clear that the plaintiff's reliance upon the assertedly disproportionate number of adverse and allegedly erroneous rulings is entirely misplaced.[5] Moreover, the City's reliance upon the aforesaid affiants' subjective impressions of this tribunal's courtroom demeanor is, without more, *i. e.* the identification of some animus nonjudicial in origin, equally unavailing. While this conclusion necessarily follows from the basic principle that "the bias necessary for recusal must be extrajudicial and not based upon what the judge has learned in [the] case", *In re International Business Machines Corp., supra*, at 930, *accord: United States v. Patrick*, 542 F.2d 381, 390 (7th

---

5. Similarly unpersuasive is the plaintiff's contention that this Court's extemporaneous characterization of the forthcoming trial as "boring", (see Affidavit of William A. LeFaiver, Esq.) whether viewed separately or in conjunction with the City's other submissions, is legally sufficient to warrant recusal. As aptly stated by the Court in *United States v. Conforte, supra*, 457 F.Supp. 641 at 658 n. 12:

> The purpose of the extra-judicial source requirement concerns the origin of the judge's bias rather than the place of its expression . . . [I]f a judge's statements or conduct during a trial refer to or reflect bias or prejudice which arose outside of his judicial duties, then the extra-judicial source rule is satisfied and recusal may be required. Conversely, the fact that a judge has made statements outside the courtroom does not automatically mean that those statements reflect "personal" as opposed to "judicial" opinions, because the origin of the opinion may lie squarely within his judicial experience.

In rejecting an argument similar to the one advanced herein, the Court of Appeals in *United States v. Haldeman, supra*, 559 F.2d at 136, concluded:

> Thus, while these thoughts were voiced in an extrajudicial setting—the interview—the informational source upon which they drew— the judge's experience as a judge—was distinctly judicial.

*See also United States v. Board of School Commissioners*, 503 F.2d 68, 80–81 (7th Cir.), *cert. denied*, 421 U.S. 929, 95 S.Ct. 1654, 44 L.Ed.2d 86 (1974).

Certainly, the judge's extemporaneous characterization of the forthcoming trial as "boring", a term defined in Webster's Third New International Dictionary as "something that is . . . wearisome and tedious . .", taken within the context of the Court's judicial participation as presiding judge in innumerable other similar protracted, involved antitrust and patent cases which have generated literally thousands of pages of documentary and highly technical evidentiary data, if not accurate, cannot reasonably be interpreted as evidencing either favoritism or the prejudgment of any issue that may arise in this case.

**378**

Cir. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1551, 51 L.Ed.2d 775 (1977), it is also supported by a realistic appraisal of the trial judge's unique role in the judicial process. Judge Frank's observations in *In re J. P. Linahan, Inc.*, 138 F.2d 650, 653–54 (2d Cir. 1943) are instructive:

> But, just because his fact-finding is based on his estimates of the witnesses, of their reliability as reporters of what they saw and heard, it is his duty, while listening to and watching them, to form attitudes towards them. He must do his best to ascertain their motives, their biases, their dominating passions and interests, for only so can he judge of the accuracy of their narrations. He must also shrewdly observe the strategems of the opposing lawyers, perceive their efforts to sway him by appeals to his predilections. He must cannily penetrate through the surface of their remarks to their real purposes and motives. He has an official obligation to become prejudiced in that sense. Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions. [footnotes omitted].

The Court in *United States v. Conforte*, 457 F.Supp. 641, 657 (D.Nev.1978) has similarly observed:

> The basic rationale of the [extrajudicial source] rule lies in the distinction between the judicial opinions or biases developed by a judge during the course of court proceedings and personal opinions or biases which have their origins in sources outside the courtroom. The former are generally regarded as inevitable and, in fact, as essential to judicial decisionmaking.

■ Given the trial judge's central role in the administration of the adjudication process, and the underlying obligation of the Court to studiously assess the various participants in a given litigation, it is not surprising that "[o]rdinarily it will not suffice for disqualification that during the course of a case the judge has made remarks critical of a party or his lawyer or that there were other indications of friction." 13 Wright, Miller & Cooper, Federal Practice and Procedure § 3542, p. 352 (1975). As properly stated by the district court in *United States v. Orbiz*, 366 F.Supp. 628, 630 (D.P.R.1973):

> It is the duty of a judge to arrive at conclusions from manifestations, writings and all other evidence presented in the course of judicial proceedings before him. Critical statements and comments of a judge directed against a moving party, or his counsel or witnesses in the course of proceedings, have been held insufficient to establish disqualifying personal bias or prejudice on the judge's part, whether discreet or indiscreet.

*Accord: United States v. Hall*, 424 F.Supp. 508, 536 (D.Okla.1975), *aff'd*, 536 F.2d 313 (10th Cir.), *cert. denied*, 429 U.S. 919, 97 S.Ct. 313, 50 L.Ed.2d 285 (1976). *See In re International Business Machines Corp., supra; United States v. Diapulse Corp. of America*, 457 F.2d 25, 30 (2d Cir. 1972): *Sperry Rand Corp. v. Pentronix, Inc., supra*, 403 F.Supp. at 371–72. Absent then a factual charge that this Court's alleged mistreatment of counsel and witnesses stems from extrajudicial sources rather than the Court's established duty to protect the record from distortions and obfuscations, *see In re International Business Machines Corp., supra*, at 930–931; *Bradley v. School Board, supra*, 324 F.Supp. at 449, the instant allegations are clearly insufficient to support a claim of partiality.

In summation, the failure of the plaintiff to advance specific factual allegations of the requisite extrajudicial animus compels the conclusion that the motion at bar is legally insufficient. The Court is also constrained to conclude, for the reasons developed more fully below, that the instant motion must fail for want of timeliness.

■ In reaching this determination, the Court would observe initially that it finds the plaintiff's contention that no timeliness requirement attaches to the operation of recently enacted section 455 entirely unpersuasive. Indeed, the prevailing weight of

legal authority expressly counsels to the contrary. The Second Circuit, for example, recently observed in *In re International Business Machines Corp., supra*, at 932–933:

> The court below, as we have indicated, found that the motion to recuse under §§ 144, 455 was not only legally insufficient, but also untimely. Section 144 explicitly requires that the motion must be timely made. While section 455 has no such requirement, we have without explication previously assumed that timeliness was also requisite under the amended statute. *United States v. Daley*, 564 F.2d 645, 651 (2d Cir. 1977), cert denied, 435 U.S. 933 [98 S.Ct. 1508, 55 L.Ed.2d 530] (1978). But see *SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir. 1977). We see no reason why there should not be a timeliness requirement here even without an explicit statutory provision. See *Ex parte American Steel Barrel Co.*, 230 U.S. 35, 46 [33 S.Ct. 1007, 1011, 57 L.Ed. 1379] (1913). [footnote omitted].

The court in *Hawaii-Pacific Venture Capital Corp. v. Rothbard, supra*, 437 F.Supp. at 234, has similarly observed that "nothing in the new § 455 abrogates the requirement of § 144 that the motion to disqualify be timely". *See United States v. Patrick, supra*, 542 F.2d at 390. The identical conclusion recently obtained in *United States v. Conforte, supra*, 457 F.Supp. at 654 n. 7, wherein the court affirmatively found that the imposition of a timeliness requirement upon new section 455 was compelled both as a matter of statutory construction and by substantial considerations of policy, stating:

> Defendants deny the applicability of the timeliness requirement on the grounds that their motion relies only on section 455, not on section 144, and that section 455 does not include a rule regarding timeliness. *See SCA Services, Inc. v. Morgan*, 557 F.2d 110, 117 (7th Cir. 1977) (Denial of disqualification on procedural grounds of untimeliness, waiver or estoppel is improper where basis for recusal is family relationship under section 455(b)(5)). It is clear, however, that the personal bias and prejudice provisions of the two sections are in pari materia and

that the statutes should consequently be construed together. While section 144 sets forth specific procedural safeguards, section 455 is wholly silent about procedure. Thus, it is sensible to use section 144's procedural framework to fill the gap in section 455. To do otherwise would allow any litigant to evade the procedure established in section 144 by simply ignoring that section in favor of section 455. The result would be to effectively repeal section 144 and render it meaningless.

Furthermore, the application of a timeliness requirement with regard to the assertion of claims of personal bias is supported by substantial considerations of policy. The purpose of such a requirement is to prevent litigants from abusing motions to disqualify as dilatory tactics or as means to "sample the temper of the court" before deciding whether to raise an issue of disqualification. *Peckham v. Ronrico Corp.*, 288 F.2d 841, 843 (1st Cir. 1961); *Rademacher v. City of Phoenix*, 442 F.Supp. 27, 29 (D.Ariz.1977). As stated in a recent case:

> There are strong policy reasons for strictly construing the timeliness requirement. Without such control, a party could speculate on the court's final judgment, withhold information learned before trial, and disqualify the judge if the decision went against him. Further, it is intolerable that a court should so lightly allow the adversary to be put to the other problems of long delays in trying a matter.

*Roussel v. Tidelands Capital Corp.*, 438 F.Supp. 684, 691 (N.D.Ala.1977).

In passing on the defendant's contention that the instant motion is unseasonably filed, the Court observes preliminarily that a vast majority of the rulings and other judicial incidents upon which the plaintiff's charge of partiality are predicated transpired several years ago. The affidavit of David C. Hjelmfelt, Esq., for example, relates almost entirely to this Court's administration of discovery in the within action during the period July 1, 1975

through March 1, 1976. James vanR. Springer, Esq., attests solely to alleged partiality which was manifested in the course of an evidentiary hearing conducted in June of 1976. The affidavit of James B. Davis, Esq., is essentially a chronology of judicial proceedings transpiring during the interim commencing with the institution of this action in July, 1975, and concluding in June, 1976. The allegations contained in the affidavit of Jack M. Schulman, Esq., are premised upon judicial proceedings of only a somewhat more recent vintage, having occurred primarily in the Fall of 1977 and the early Spring of 1978. Affiant Holden attests to certain observations undertaken during the period January, 1978 through January, 1979, and the affidavit of Abbott is specifically predicated upon a pretrial hearing of January 27, 1979, over one year ago.

A perusal of the affidavit of William B. Norris, Esq., who currently serves as lead counsel for the City in the instant litigation, is particularly revealing. Norris expressly acknowledges, for instance, that his suspicions regarding this Court's impartiality were initially aroused by this Court's Order of February 17, 1978 (Affidavit ¶ 9). It would appear from his affidavit that, in Norris' judgment, his initial suspicions of February, 1978 were subsequently confirmed by, *inter alia*, this Court's Orders of September 7, 1978 and November 29, 1978.[6] At any rate, Norris affirmatively states that, in his opinion, "Judge Krupansky gave evidence at the January 27, 1979 hearing that his impartiality might reasonably be questioned". (Affidavit ¶ 33).

The plaintiff's moving papers demonstrate with unmistakable clarity that a significant portion of the events underlying the plaintiff's current charge of partiality transpired at a relatively early stage of this protracted proceeding, and that ensuing incidents in the years 1977, 1978, and early 1979 reinforced the City's impression that this forum lacked impartiality. Indeed, this

is reflected in the plaintiff's Memorandum in Support of Motion to Disqualify wherein the City indicates the instant motion is predicated upon "the attitude, demeanor, rulings and other written opinions of Hon. Robert B. Krupansky *during the years that this action has been pending*". *Id.* at p. 2. (emphasis supplied).

Plaintiff seeks to justify the timing of the instant motion, which incidentally, was filed approximately eleven days before the scheduled March 10, 1980 trial date, and only after the City has sought and secured five prior continuances of trial, by its assertion that little if any actual prejudice to the City's right to a fair trial was manifest herein until the recent issuance of this Court's January 15, 1980 and February 19, 1980 Orders. Specifically, the plaintiff states:

> The City was in no position to make a *final determination* of the fact that Judge Krupansky's lack of impartiality would impinge upon the City's right to a fair trial until Judge Krupansky denied the City's collateral estoppel motion in January 1980, and, in February 1980, the City's motion for limited discovery and the City's requested leave to file an amended complaint.

Memorandum in Support of Motion to Disqualify at p. 9. (emphasis supplied).

■ A review of the applicable authorities discloses that the foregoing proffered justification entirely misconceives the purposes and policies underlying the timeliness requirement. The law is "well settled that one must raise the disqualification of the judge at the earliest moment after knowledge of the facts demonstrating the basis for such disqualification." *United States v. Patrick, supra,* 542 F.2d at 390. *Accord: Satterfield v. Edenton-Chowan Board of Education,* 530 F.2d 567, 574–75 (4th Cir. 1975); *Duffield v. Charleston Area Medical Center, Inc.,* 503 F.2d 512, 515–16 (4th Cir. 1974); *Marcus v. Director, Office of Work-*

---

6. The Court observes parenthetically that the allegations contained in paragraphs 21 through 25 of the Norris affidavit, even if such allegations were true, are predicated upon purely judicial conduct specifically undertaken by this Court pursuant to its inherent authority to direct and supervise the enforcement of its orders and decrees.

ers' Compensation Programs, 548 F.2d 1044, 1051 (D.C.Cir.1976); United States v. Conforte, supra, 457 F.Supp. at 653. Thus, it is incumbent upon the moving party to act expeditiously upon "notice of potentially disqualifying circumstances". Andros Compania Maritima v. Marc Rich & Co. A. G., 579 F.2d 691, 700 (2d Cir. 1978). As alluded to previously, "[t]he purpose of such a requirement is to prevent litigants from abusing motions to disqualify as dilatory tactics or as a means to 'sample the temper of the court' before deciding whether to raise an issue of disqualification." United States v. Conforte, supra, 457 F.Supp. at 654 n. 7, quoting Peckham v. Ronrico Corp., 288 F.2d 841, 843 (1st Cir. 1961). As succinctly stated by the Third Circuit Court of Appeals in Smith v. Danyo, supra, 585 F.2d at 86:

> The judicial process can hardly tolerate the practice of a litigant with knowledge of circumstances suggesting possible bias or prejudice holding back, while calling upon the court for hopefully favorable rulings, and then seeking recusal when they are not forthcoming. Neither can it tolerate the practice of waiting until the eve of trial and then resorting to a § 144 affidavit in order to obtain an adjournment.

Accord: Roussel v. Tidelands Capital Corp., 438 F.Supp. 684, 691 (N.D.Ala.1977); Rademacher v. City of Phoenix, 442 F.Supp. 27, 29 (D.Ariz.1977).

The plaintiff's submission of the instant motion under the circumstances prevailing herein manifests an utter disregard for these sound legal principles. In clear contravention of the policies underlying the timeliness requirement, the City has, through its conduct and indeed by its own admissions, tacit or otherwise, delayed its disqualification challenge until an assertedly "final determination", premised entirely upon the outcome of the Court's rulings of

early 1980, was forthcoming. This withholding of the plaintiff's recusal request prevailed in spite of the City's professed knowledge of potentially disqualifying circumstances as early as June, 1976, and thereafter, throughout the ensuing period up to and including January, 1979. This protracted "sampling of the court's temper", undertaken over a period of nearly four years duration, cannot, consistent with the foregoing governing authorities, be condoned. See also In re International Business Machines Corp., supra at 932–933. See generally National Auto Brokers Corp. v. General Motors Corp., supra, 572 F.2d at 958–59; United States v. Daley, supra, 564 F.2d at 651. Moreover, the Court is constrained to observe that the motion at bar, properly assessed in light of the foregoing circumstances, and appraised further in view of the City's repeated resorts to dilatory practices in this proceeding, as recently detailed in this Court's Orders of January 15, 1980 and February 19, 1980, has every appearance of yet another dilatory tactic calculated to further defer ultimate resolution of the instant controversy.

The Court accordingly concludes that the City's motion is both legally insufficient and untimely within the purview of recently enacted § 455.[7] The Court's determination that disqualification is neither warranted nor appropriate under the aforesaid statutory provision is also dispositive of plaintiff's constitutional claim predicated upon the due process clause of the Fifth Amendment. As properly stated by the Second Circuit in In re International Business Machines Corp., supra, at 932 n. 11:

> Because of our determination that recusal is not required under the disqualification statutes, IBM's contention that its due process right to a fair trial was infringed by the Chief Judge's alleged personal bias must also fall. The constitutional fair

7. During the preparation of this Order, the City has submitted for the Court's perusal a copy of a recent newspaper editorial, which has been denominated as Exhibit 1 to Plaintiff's Reply Brief in Support of Disqualification. The conclusory and, in the main, factually inaccurate allegations thereof clearly lack the requisite

particularity necessary to merit judicial consideration. See infra. More fundamentally, the exhibit does nothing to obviate the shortcomings herein-before determined to be fatal to the instant motion, namely, the absence of indentified or demonstrated extrajudicial animus, and secondly, want of timeliness.

trial requirement is indeed a "stringent rule", and will bar trial when the appearance of justice is not satisfied as well as in instances of actual bias. *In re Murchison*, 349 U.S. 133, 136 [75 S.Ct. 623, 625, 99 L.Ed. 942] (1955). Moreover, the constitutional right is independent from those conferred by § 144 and § 455, and may well force recusal in instances where the statutes are not technically applicable. See *United States v. Sciuto*, 531 F.2d 842, 845 (7th Cir. 1976); *United States v. Conforte, supra,* 457 F.Supp. at 659. Yet it was to protect this guarantee that the recusal statutes were enacted, Wright, Miller & Cooper, *supra,* § 3541, at 343, and it would be anomalous to hold that a claim under the statutes insufficient on its merits could nevertheless satisfy the constitutional standard. We agree with the District of Columbia Circuit that anything inpinging on the constitutional right "would have more readily violated § 144 and § 455." *United States v. Haldeman, supra,* 559 F.2d at 130 n. 276; see *United States v. Conforte,* 457 F.Supp. at 659 n. 13. Accordingly, our rejection of IBM's substantive claim of bias under these sections *a fortiori* defeats its due process allegation.

To briefly reiterate, the plaintiff's allegations, examined individually or collectively, neither identify or demonstrate any personal or extrajudicial bias or prejudice on the part of this tribunal. Judge Sirica's evaluation of the defendants' motion for disqualification in *United States v. Mitchell,* 377 F.Supp. 1312, 1323 (D.D.C.1974), *aff'd sub. nom. United States v. Haldeman, supra,* is equally applicable here: "[Plaintiff's] best effort consists of alleging a battery of facts from which it is hoped one [w]ould infer some bias favorable to the [defendant]. Even, then, however, [plaintiff has] cited nothing to suggest that any such bias, which the court assures them does not exist, is personal." As previously indicated, the City's untimely allegations are predicated entirely upon "judicial actions taken within the four corners of the courtroom in the course of this proceeding." *United States v. International Business Machines Corp.,*

475 F.Supp. 1372, 1390 (S.D.N.Y.1979), *aff'd, In re International Business Machines Corp., supra.* That those judicial actions, whether ultimately upheld on appellate review or not, afford no legally sufficient support for the plaintiff's unseasonable motion is made abundantly clear by the authorities hereinbefore set forth.

This case was assigned to this tribunal not by choice but by the random selection system. It is but one of the hundreds of cases so assigned to this Court each year for judicial administration to disposition. As is every case assigned to this Court, the instant action has been diligently, attentively and industriously administered with a view toward providing the parties a fair, impartial and speedy trial. Paraphrasing Chief Judge Edelstein in the IBM litigation, this Court has no interest in the ultimate outcome of this case other than the interest of every judicial officer that the truth be discovered and the law correctly applied. The City identifies no personal prejudice and bias on the part of this Court because none exists. *United States v. International Business Machines Corp., supra,* 475 F.Supp. at 1391. To favorably entertain the City's motion would, under the facts and circumstances presented, constitute an entirely unwarranted abdication of judicial responsibility, and, in the considered opinion of this tribunal, delay ultimate resolution of this cause for an additional two to four years.

Accordingly, the City's request that this Court disqualify itself pursuant to 28 U.S.C. § 455 and the Fifth Amendment to the United States Constitution is hereby denied. The Order staying the proceeding of this cause issued on February 29, 1980, shall be terminated as of March 19, 1980, and the trial of this matter shall proceed promptly on March 24, 1980, at 9:15 a. m.

IT IS SO ORDERED.